UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARTHA ALICIA HERNANDEZ ARROYO,

Petitioner,

v.

SERGIO ALBARRAN, et al.,

Respondents.

Case No.  3:26-cv-06745

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 2

Before the Court is Petitioner's *Ex Parte* Motion for Temporary Restraining Order.  (Dkt. No. 2.)  On July 1, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and an *Ex Parte* Motion for Temporary Restraining Order seeking, among other things: (1) her release from custody, and (2) to enjoin Respondents from re-detaining her absent further Court order.  For the following reasons, the TRO is **GRANTED**, as modified below.

**BACKGROUND**

According to the record before the Court, Petitioner, who is from Mexico, entered the United States without inspection around 2007.  Immigration officials apprehended her and returned her to Mexico.  She returned to the United States without inspection after that.  She then married a United States citizen.  Around 2020, Joseph Lacome, an attorney, told Petitioner she could apply for asylum, which she did.  About four years later, Mr. Lacome helped Petitioner file an application for humanitarian parole to visit her sick mother in Mexico.  She was granted parole, briefly visited her mother in Mexico in 2025, and returned to the United States without issue.

Mr. Lacome then assisted Petitioner with filing a spousal petition to adjust status through her husband, who is a United States citizen.  When she went to her adjustment of status interview, the officer told her she had a prior deportation order and that she must report to Immigration and

Customs Enforcement ("ICE").

Petitioner was scheduled for a reasonable fear interview on April 17, 2026.  Mr. Lacome tried to reschedule the interview, but was told by email there was no interview.  In May 2026, Petitioner attended an ICE check-in without incident.  The next month she again attended an ICE check-in without incident.  Today, July 1, she went again, but this time, ICE detained her without notice.

Petitioner's counsel gave notice to the Civil Chief of the US Attorney's Office for the Northern District of California of the habeas petition and the application for a temporary restraining order.

**LEGAL STANDARD**

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction.  *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017).  Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied."  *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (cleaned up) (emphasis in original).  "[W]hen the Government is the opposing party," the final two factors "merge."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.  A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'"  *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S.

2

423, 439 (1974)).

**DISCUSSION**

Petitioner has demonstrated a likelihood of success on the merits of her claim that her ongoing detention violates her procedural due process rights under the Fifth Amendment. Petitioner has a substantial interest in remaining out of custody, and the Due Process Clause entitles Petitioner to a bond hearing before an immigration judge prior to any arrest or detention. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1030–36 (N.D. Cal. 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to similar circumstances). Her parole grant to visit Mexico last year, with no issue upon her return, plus her several uneventful ICE check-ins, reflect a government determination that she is neither a flight risk nor a danger to the community. Petitioner has a strong interest in remaining at liberty unless she no longer meets those criteria. On this record, no evidence indicates that Petitioner no longer meets the criteria, and therefore, Petitioner has shown a strong likelihood of success on the merits.

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that he has "also carried [his] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir.

United States District Court
Northern District of California

3

2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Meanwhile, the potential harm to the government is minimal. The government, at most, faces a short delay in detaining Petitioner if it ultimately demonstrates his detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)). The balance of hardships thus tips decidedly in Petitioner's favor.

A TRO immediately releasing Petitioner is appropriate to return her to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo). Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is **GRANTED** as detailed below.

Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

United States District Court
Northern District of California

4

**ORDER**

For the foregoing reasons, **IT IS ORDERED** that:

(1) Petitioner's application is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter.

(2) Respondents are **ORDERED** to release Petitioner immediately from Respondents' custody and **ENJOINED AND RESTRAINED** from re-detaining Petitioner until further order of Court.  Respondents are **ENJOINED** from removing Petitioner from California, and, if they have already transferred her, are **ORDERED** to return her to California for her release.  Respondents are **PROHIBITED** from removing Petitioner from the United States until these proceedings have terminated.

(3)  Respondents shall provide a status report confirming Petitioner's release by **July 2, 2026, at 3:00 p.m**.

(5) Respondents are **ORDERED TO SHOW CAUSE** in-person at a hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, at **9:00 a.m. on July 14, 2026**, why a preliminary injunction should not issue.  Respondents **SHALL** file a response to Petitioner's motion by no later than **July 8, 2026**.  Any reply **SHALL** be filed by **July 10, 2026**. The assigned Judge may modify this schedule as appropriate.

(6) This Order shall remain in effect until **5:00 p.m.** on **July 14, 2026,** or as otherwise directed by the Court.

This Order disposes of Docket No. 2.

**IT IS SO ORDERED.**

Dated: July 1, 2026

_____
JACQUELINE SCOTT CORLEY
United States District Judge