UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARTHA ALICIA HERNANDEZ ARROYO,

Plaintiff,

v.

SERGIO ALBARRAN, et al.,

Defendants.

Case No.  26-cv-06745-BLF

**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**

[Re: Dkt. No. 2]

Petitioner Martha Alicia Hernandez Arroyo filed a petition for writ of habeas corpus against Respondents Field Office Director of the San Francisco Immigration and Customs Enforcement ("ICE") Office Sergio Albarran, Acting ICE Director Todd Lyons, Secretary of the United States Department of Homeland Security ("DHS") Markwayne Mullin, and Acting Attorney General of the United States Todd Blanche (collectively, the "Government").  ECF No. 1 ("Pet.").

On July 1, 2026, Ms. Hernandez Arroyo filed an *ex parte* motion for a temporary restraining order ("TRO").  ECF No. 3 ("Mot.").  The same day, the Court issued a TRO requiring the Government to immediately release Ms. Hernandez Arroyo and enjoining and restraining it from re-detaining her without notice and a pre-deprivation hearing before a neutral decisionmaker.  ECF No. 5 ("Order").  The Court also ordered the Government to show cause why a preliminary injunction should not issue.  *Id.*  Finding good cause, the Court subsequently extended the TRO for an additional two days, through July 16, 2026, at 5:00 p.m.  ECF No. 9; *see also* Fed. R. Civ. P. 65(b)(2).  The Government filed a brief in opposition, ECF No. 11 ("Opp."), and Ms. Hernandez Arroyo filed a reply in support of her motion, ECF No. 12 ("Reply").  The Parties jointly requested that the Court submit the motion for a preliminary injunction without a hearing,

ECF No. 14, so the Court vacated the hearing, ECF No. 15.  *See* Civil L.R. 7-1(b).  For the reasons set forth below, Ms. Hernandez Arroyo's motion for a preliminary injunction is GRANTED.

## I.     BACKGROUND

Ms. Hernandez Arroyo is a 52-year-old asylum seeker from Mexico.  Pet. ¶¶ 2, 27; Weiss Decl. ¶ 4, ECF No. 3-2.  She first entered the United States without inspection in about 1989 and alleges that she has resided in Half Moon Bay since that time, except for short trips back to Mexico.  Weiss Decl. ¶ 4.  She is married to an American citizen and has no criminal convictions.  Pet. ¶¶ 28, 35.

On January 18, 1999, Ms. Hernandez Arroyo attempted to re-enter the United States through the Calexico, CA port of entry using an alias.  Ex. 1 at 2, 4, ECF No. 11-2.  Ms. Hernandez Arroyo was detained and the Immigration and Naturalization Service ("INS") determined that she was inadmissible because she presented a document that was not legally issued to her.  *Id.*; Ex. 2, ECF No. 11-3.  On that basis, INS entered a final Order of Removal ("1999 Removal Order") under Section 235(b)(1) of the Immigration and Nationality Act to "Teresa Covarrubias-Arroyo," Ms. Hernandez Arroyo's purported alias.  Ex. 2.  Sometime thereafter, Ms. Hernandez Arroyo re-entered the United States without inspection.

In about 2006, Ms. Hernandez Arroyo returned to Mexico to care for her father, who had been shot and injured by members of a cartel.[1]  Weiss Decl. ¶ 5.  On February 12, 2006, Ms. Hernandez Arroyo re-entered the United States without inspection near Tecate, CA, and was arrested by U.S. Border Patrol.  Pet. ¶ 27; Ex. 1 at 2–4.  The next day, she voluntarily returned to Mexico.  Pet. ¶ 27; Ex. 1 at 2–4.  She re-entered the United States without inspection sometime thereafter.  Weiss Decl. ¶ 5; Ex. 1 at 3.

Ms. Hernandez Arroyo has made several attempts to adjust her status in the United States.  Around 2010, Ms. Hernandez Arroyo hired an attorney to file a spousal petition, but nothing apparently came of this effort.  Pet. ¶ 28.  Around 2020, another attorney helped Ms. Hernandez

---

[1] Petitioner alleges that this occurred "[i]n about 2007," Weiss Decl. ¶ 5, but the Government's documents are more precise and indicate that the following events occurred in 2006, *see* Ex. 1 at 2-4.

Arroyo apply for asylum on the basis that she is afraid to return to Mexico. *Id.* ¶¶ 29, 32. In 2024, the same attorney helped Ms. Hernandez Arroyo file an application for humanitarian parole to travel to Mexico to visit her mother, who was sick. *Id.* ¶ 30. Parole was granted by DHS and Ms. Hernandez Arroyo traveled to see her mother in 2025 without incident. *Id.*

Most recently, Ms. Hernandez Arroyo filed a spousal petition to adjust status through her U.S. citizen husband. *Id.* ¶ 31. On March 23, 2026, she appeared before U.S. Citizenship and Immigration Services ("USCIS") for an adjustment of status interview. *Id.*; Ex. 1 at 2; Ex. 3, ECF No. 11-4. USCIS determined that Ms. Hernandez Arroyo had previously been removed in 1999 pursuant to an order of deportation and reinstated the 1999 Removal Order. Gallardo-Soriano Decl. ¶ 8; Ex. 1 at 2, 4; Ex. 3. Ms. Hernandez Arroyo was subsequently referred to the Asylum Pre-Screening Office for a Reasonable Fear Interview and released from custody under an Order of Supervision. Gallardo-Soriano Decl. ¶ 8; Ex. 1 at 4.

The Reasonable Fear Interview was scheduled to take place on April 17, 2026. Pet. ¶ 32. Ms. Hernandez Arroyo's counsel attempted to reschedule the interview and allegedly received an email from USCIS stating that there was no interview. *Id.*; Weiss Decl. ¶ 10. The Government contends that Ms. Hernandez Arroyo failed to appear at the interview, and she was issued a negative decision on that basis. Gallardo-Soriano Decl. ¶ 10; Ex. 1 at 4–5.

Under the terms of her release, Ms. Hernandez Arroyo was required to attend regular ICE check-ins. She attended check-ins in May and June 2026 without incident. Pet. ¶ 33. On July 1, 2026, Ms. Hernandez Arroyo attended a third check-in at which time she was served with a Notice of Revocation of Release and detained. *Id.* ¶ 33; Gallardo-Soriano Decl. ¶ 11; Ex. 4, ECF No. 11-5. The Notice indicated that her release was revoked because "[t]he purposes of release ha[d] been served" or "[c]ircumstances ha[d] changed such that there [was] a significant likelihood of removal in the reasonably foreseeable future." Ex. 4 at 1. The Notice did not state what purposes of release were served and left blank sections indicating whether ICE had obtained a travel document or scheduled Ms. Hernandez Arroyo's deportation. *Id.* at 1–2. Later that evening, Ms. Hernandez Arroyo was released from custody after this Court granted her TRO. ECF No. 7.

## II.   LEGAL STANDARD

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that [s]he is likely to succeed on the merits, [2] that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [her] favor, and [4] that an injunction is in the public interest." *Id.* at 20. "[W]hen the Government is the opposing party," the final two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III.   DISCUSSION

### A.   Likelihood of Success on the Merits

Ms. Hernandez Arroyo argues that her re-detention violated the Due Process Clause of the Fifth Amendment. Pet. ¶¶ 51–58. The Government contends that because Ms. Hernandez Arroyo is subject to a final order of removal, her re-detention is authorized by 8 U.S.C. § 1231 and that "the Supreme Court has held that [re-detention is permissible] . . . without any pre-detention hearing process." Opp. at 6–8. The Court begins by addressing whether Ms. Hernandez Arroyo has a protected liberty interest, before turning to her Due Process claims.

### 1.   Ms. Hernandez Arroyo's Protected Liberty Interest

The threshold issue is whether Ms. Hernandez Arroyo has a constitutionally protected liberty interest such that the Due Process Clause applies. Ms. Hernandez Arroyo urges the Court to find that she has a liberty interest in remaining out of custody because she was released on her own recognizance under an Order of Supervision and received humanitarian parole from DHS to visit her mother in Mexico. Mot. at 11; Reply at 1–6. The Government contends that under the controlling statutory scheme, 8 U.S.C. § 1231, Ms. Hernandez Arroyo is subject to mandatory detention and is not owed a pre-detention hearing. Opp. at 6–8.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of

4

physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Accordingly, the Due Process Clause typically "requires some kind of a hearing before the State deprives a person of [their] liberty," even when it is lawfully revokable. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [the noncitizen] have a liberty interest in remaining out of custody on bond."). Although in some circumstances the initial decision to detain or release an individual may be within the Government's discretion, the decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[] to live up to the . . . conditions [of release]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody.").

Applying these principles, the Court concludes that Ms. Hernandez Arroyo has a protected liberty interest in remaining out of custody. The Government chose not to detain Ms. Hernandez Arroyo after she filed her asylum application in 2020 and affirmatively permitted her to travel to Mexico in 2025 and re-enter the United States by granting her application for humanitarian parole. Pet. ¶¶ 29, 30; *see also Kharitonova v. Albarran*, No. 26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) ( "The Government's decision not to detain Petitioner when it processed her asylum application . . . gave rise to a liberty interest" even though the government "never before sought to detain her" (quotation marks and citation omitted)). Then, after reinstating the 1999 Removal Order on March 23, 2026, the Government made the affirmative decision to release Ms. Hernandez Arroyo under an Order of Supervision rather than detain her. *See* Gallardo-Soriano Decl. ¶ 9; Ex. 1 at 4. In exercising its discretion to release Ms. Hernandez Arroyo from custody, the Government established a protected liberty interest, which it twice reaffirmed when Ms. Hernandez Arroyo appeared at ICE check-ins and was subsequently permitted to return home to her husband. Pet. ¶ 33; *see also Pinchi*, 792 F. Supp. 3d at 1032; *Saravia v. Sessions*, 280 F.

Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ("Once a noncitizen has been released . . . federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen . . . is now subject to a final order of removal."). This conclusion accords with other decisions in the District. *See Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 WL 2419262, at *1, 3–4 (N.D. Cal. Aug. 21, 2025) (granting preliminary injunction for noncitizen who was subject to a reinstated final order of removal but released on an Order of Supervision).

The Government's principal argument—that 8 U.S.C. § 1231 requires mandatory detention—misses the mark. *See* Opp. at 6–8. Although Section 1231 provides for mandatory detention of a noncitizen during a 90-day removal period after the noncitizen has been ordered removed, *see* 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A), the absence of a statutorily mandated pre-detention hearing has no bearing on whether Ms. Hernandez Arroyo has a protected liberty interest under the Constitution based on the Government's affirmative decision to release her from custody. Meanwhile, the Government's argument that "the Supreme Court has held that detention of noncitizens subject to a final order of removal under 8 U.S.C. § 1231(a)(6) is constitutional, *without any pre-detention hearing process*," is unavailing because the cases it cites concern only *post*-deprivation issues and therefore do not stand for that proposition. *See* Opp. at 4–8 (emphasis added) (citing *Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022) (concerning detention beyond 90 days); *Zadvydas v. Davis*, 533 U.S. 678 (2001) (same); *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021) (concerning detention of noncitizens seeking withholding of removal)); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1198–202 (9th Cir. 2022) (collecting cases).

The Government's argument that Ms. Hernandez Arroyo's detention is mandatory under Section 1231(a)(2) is also incorrect. *See* Opp. at 6–8. Under Section 1231, the 90-day removal period begins on "[t]he date the order of removal becomes administratively final," or after other events that are inapplicable here. 8 U.S.C. § 1231(a)(1)(B). "[R]einstated removal orders are 'administratively final'" because the noncitizen "had the opportunity to seek review in the [Board of Immigration Appeals] after the initial removal order was entered, and § 1231(a)(5) explicitly prohibits them from seeking review or relief from the order after it is reinstated following

6

unlawful reentry." *Guzman Chavez*, 594 U.S. at 534–35.  Accordingly, the 1999 Removal Order was administratively final when it was reinstated on March 23, 2026.  However, ICE did not detain Ms. Hernandez Arroyo until July 1, 2026, which was 100 days later.  Thus, she is not subject to mandatory detention because "the default status after the 90-day removal period is . . . release on conditions," as occurred here.  *Alva*, 2025 WL 2419262, at *3; *see also* 8 U.S.C. §§ 1231(a)(3), (a)(6).

Accordingly, the Court finds that Ms. Hernandez Arroyo has a constitutionally protected liberty interest based on the Government's affirmative decision to release her from detention on an Order of Supervision.

### 2.    Procedural Due Process

Ms. Hernandez Arroyo argues that re-detention without a hearing before a neutral decisionmaker would violate her procedural due process rights under the test set out by the Supreme Court in *Mathews v. Eldridge*.  Mot. at 12–15.  The Government does not address the constitutional argument under *Mathews*, resting instead on the contention that Section 1231 does not require a pre-deprivation hearing.  *See* Opp at 5–9.

In *Mathews v. Eldridge*, the Supreme Court explained that "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  The Supreme Court identified three factors relevant to the due process inquiry: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.  The Ninth Circuit has recognized that many courts have applied the *Mathews* test in considering due process challenges in the immigration context. *See Rodriguez Diaz*, 53 F.4th at 1206.  This Court joins others in the Ninth Circuit in applying the *Mathews* factors to determine the constitutionally sufficient procedures to protect Petitioner's liberty interest. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1033–36; *Omer G. G. v. Kaiser*,

United States District Court
Northern District of California

815 F. Supp. 3d 1098, 1110–11 (E.D. Cal. 2025).

### a.    Private Interest

As to the first *Mathews* factor, the Court finds that Ms. Hernandez Arroyo has a substantial private interest in remaining out of immigration custody because she has been released under an Order of Supervision.  *See Morrissey*, 408 U.S. at 482; *Alva*, 2025 WL 2419262, at \*4.  Ms. Hernandez Arroyo has a significant interest in remaining in her home and with her husband outside of immigration custody.  *See Pinchi*, 792 F. Supp. 3d at 1033; *Alva*, 2025 WL 2419262, at \*4.  Her "detention denies [her] that freedom."  *Omer G. G.*, 815 F. Supp. 3d at 1111.

### b.    Risk of Erroneous Deprivation

As to the second *Mathews* factor, the Court finds that there is a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would guard against.  Where, as here, the petitioner "has not received any bond or custody redetermination hearing," "the risk of an erroneous deprivation [of liberty] is high" because neither the government nor Petitioner has had an opportunity to determine whether there is any valid basis for her detention.  *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025).  This is particularly true here given that the 1999 Removal Order refers only to Ms. Hernandez Arroyo's purported alias, and the Notice of Revocation of Release does not indicate that ICE has procured travel documents or scheduled her deportation, or that circumstances have otherwise changed.  *See* Ex. 2; Ex. 4; *see also Saravia*, 280 F. Supp. 3d at 1176.  "Moreover, where Defendants have taken the likely erroneous position that Petitioner is subject to mandatory detention under § 1231(a), the risk of erroneous deprivation is all the more significant."  *Alva*, 2025 WL 2419262, at \*6.  Thus, the Court concludes that the second *Mathews* factor favors Ms. Hernandez Arroyo.

### c.    Government Interest

As to the third *Mathews* factor, the Government has a minimal interest in re-detaining Ms. Hernandez Arroyo without a hearing.  "[A]bsent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process."  *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).  The Government does not contend that any exigency exists here.  Nor could it, given that Ms. Hernandez Arroyo has attended her regularly scheduled ICE check-ins and has no

relevant criminal history.  Although she did miss her Reasonable Fear Interview, Ms. Hernandez Arroyo alleges that this was because her counsel was told no such interview existed, and she attended multiple check-ins thereafter.  As the Government fails to offer any evidence of urgency, the Court finds that the third *Mathews* factor weighs in favor of Ms. Hernandez Arroyo.

\*          \*          \*

Having determined that each of the *Mathews* factors favors Petitioner, the Court concludes that Ms. Hernandez Arroyo has shown a likelihood of success on the merits of her claim that the Due Process Clause entitles her to a pre-deprivation hearing before a neutral decisionmaker before she may be re-detained.

### 3.          Substantive Due Process

Ms. Hernandez Arroyo also argues that re-detention would violate her substantive due process rights.   Mot. at 8–11.  Because the procedural due process issue is dispositive, the Court need not address the substantive due process claim.  *See Llanes Tellez v. Bondi*, 826 F. Supp. 3d 1141, 1148 (N.D. Cal. 2025).

### B.          Remaining *Winter* Factors

Ms. Hernandez Arroyo has demonstrated that the remaining *Winter* factors tilt sharply in her favor.  As to the second *Winter* factor, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  The Government argues that because "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process," Ms. Hernandez Arroyo has not suffered any constitutional harm.  Opp. at 10 (citing *Demore v. Kim*, 538 U.S. 510, 523 (2003)).  But as the Court explained above, Ms. Hernandez Arroyo has demonstrated a likelihood of success on the merits of her procedural due process claim.  And *Demore* is inapplicable because it does not purport to address what pre-deprivation process is owed to noncitizens.  *See* 538 U.S. at 514, 523 (noting that petitioner "conced[ed] that he was deportable" and therefore "forwent a hearing at which he would have been entitled to raise any nonfrivolous argument available to demonstrate that he was not properly included in a mandatory detention category").

United States District Court
Northern District of California

United States District Court
Northern District of California

As to the third and fourth *Winter* factors, which merge in this case against the Government, "[t]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 25-cv-05071-BLF, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (citation omitted). The Government's argument that its interest in the "steady enforcement of its immigration laws" outweighs Ms. Hernandez Arroyo's interest because she "has not shown a likelihood of success on the merits of her claim" is unavailing because the Court has found that Ms. Hernandez Arroyo made the requisite showing. Opp. at 10–11. The Government also overstates the risks posed by granting Ms. Hernandez Arroyo's motion. It argues that "[r]ecognizing the availability of a preliminary injunction under these circumstances would permit any noncitizen subject to reinstated removal to obtain additional review, circumventing the comprehensive statutory scheme that Congress enacted." Opp. at 11. But the Court's decision turns squarely on the decision to release Ms. Hernandez Arroyo on an Order of Supervision and therefore does not implicate the Government's authority to detain noncitizens during the 90-day removal period.

## C.      Security

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks, citation, and emphasis omitted). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* Because the Court perceives no prejudice to the Government resulting from the preliminary injunction, the Court finds it appropriate to issue the preliminary injunction without requiring security.

## IV.      ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Ms. Hernandez Arroyo's motion for preliminary injunction is GRANTED and Respondents are ENJOINED AND RESTRAINED against re-detaining Ms. Hernandez Arroyo without notice and a pre-deprivation hearing before a neutral decisionmaker.

(2) This Preliminary Injunction SHALL remain in effect during the pendency of this case, unless modified by the Court.

(3) The Parties SHALL submit a stipulation proposing a briefing schedule for the underlying habeas petition on or before **July 28, 2026.**

Dated: July 16, 2026

Beth Labson Freeman
United States District Judge

United States District Court
Northern District of California

11